Perry, Appellant, *v.* Spellman.

Argued December 14, 1960. Before RHODES, P.J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Robert W. Lentz,* with him *G. Clinton Fogwell, Jr.,* and *Reilly & Fogwell,* for appellant.

*John O. Platt, Jr.,* with him *MacElree, Platt & Marrone,* for appellees.

OPINION BY ERVIN, J., March 22, 1961:

The plaintiff, William E. Perry, a real estate broker, brought suit in assumpsit for a broker's commission by virtue of an oral agreement made with the defendant, Charles Spellman. The jury rendered a verdict

in favor of the plaintiff in the amount of $2,364.00. The court below entered judgment n.o.v. for the defendant. The plaintiff appealed.

The plaintiff is entitled to the benefit of every fact and inference of fact which may be reasonably deduced from the evidence: *Jemison v. Pfeifer,* 397 Pa. 81, 152 A. 2d 697. Viewed in this light the facts are as follows: The plaintiff, William E. Perry, a licensed real estate broker, was orally engaged in May of 1956 by the defendant, Charles Spellman, to sell the business, Chester County Fuel and Supply, Inc., for a price of $40,000.00. The business was conducted on real estate owned by Spellman and his wife. In the latter part of May, Spellman called Perry by phone and told him that he wanted to sell the business and during the conversation Perry pointed out to Spellman that he should take into consideration among his selling expenses a 5% broker's commission. Spellman indicated that this was satisfactory. Perry subsequently produced several prospects and in late 1956 or early 1957 procured for the defendant one Robert Nolan. Nolan then entered into a written agreement of sale dated February   ,[1] 1957 with the defendant. In paragraph 7 thereof Spellman warranted and represented certain facts pertaining, inter alia, to the quantity of retail sales of fuel oil sold by the corporation between January 31, 1956 and January 31, 1957, as well as the number of active customers as of the date of the agreement.

Paragraph 13 of the agreement provided: "In the event that between the date of this agreement and closing, buyer is not satisfied as to the truth or correctness of seller's warranties set forth in Paragraph 7 hereof, he may at his option either terminate this agreement by notice in writing to the seller, in which event

---

[1] It was stipulated that the agreement was entered into February 28, 1957.

the $4000.00 down payment shall be returned to buyer by the escrow agent and all rights, obligations and liabilities of the parties shall cease and terminate, and this agreement shall become null and void, or buyer may proceed with closing with a proportionate reduction in the selling price if required hereunder." Also in the agreement the corporation, as seller, agreed to pay the plaintiff a commission of $2,000.00, representing 5% of the purchase price of $40,000.00, exclusive of inventory and accounts receivable. Plaintiff's commission was not claimed by virtue of the written instrument but as the result of the oral agreement aforesaid.

No final settlement, however, was ever made under the agreement because Nolan, the purchaser, indicated, under paragraph 13, his dissatisfaction with the truth and correctness of the warranties and elected to terminate rights and duties existing thereunder.

The court below entered judgment n.o.v. for the defendant because the plaintiff broker did not produce an unconditional agreement of sale specifically enforceable against the purchaser. As authority for this position, the court below relied upon the case of *Stuart v. McEttrick,* 136 N.E. 395, a Massachusetts case, which is in point but which is not controlling in Pennsylvania.

The court below also relied upon the cases of *S. V. Thompson Co. v. Goldman,* 41 Pa. Superior Ct. 209; *McDonald v. Kimmell,* 70 Pa. Superior Ct. 282; *Business Realty Co. v. Schaffer,* 99 Pa. Superior Ct. 175. In none of these cases was the failure to carry out the contract due to a default of the seller. In the present case the purchaser was ready, willing and able to carry out the contract but he refused to do so because the warranties made by the seller were not kept. The purchaser examined the books of the seller and procured information which convinced him that the seller's war-

ranties could not be carried out. The details of the contract of sale were gone over very carefully by the defendant and he in fact submitted the agreement to his own attorney for study before he signed the same. He made no complaint as to the conditional character of the agreement. He apparently was entirely satisfied with the purchaser and all of the terms of the agreement. He accepted the agreement and the plaintiff-broker had done everything that he was to do to earn his commission.

We think the case is controlled by the case of *Clark v. Battaglia*, 47 Pa. Superior Ct. 290, 292, wherein the Court said: "The learned trial judge held that the expression in the defendant's agreement to pay, viz., 'upon the consummation of the said sale' 'meant the completion of the negotiations with the proposed purchaser and not the actual delivery of deeds by the parties.' It is argued with much earnestness by the able counsel for the appellant that because the evidence disclosed the execution of this paper by the defendant followed the agreement between him and the purchaser that the expression quoted could not have been intended to have the meaning given to it by the learned trial judge. If it did not, then it seems clear to us that the most favorable construction which the defendant could ask to have placed upon the expression would be to have it interpreted to refer to the time when the money earned was to be paid. It nowhere appears that the plaintiff was to do anything further in the premises. He had brought seller and buyer together. He had arranged prices and conditions of sale satisfactory to both and had armed each of the parties with an enforceable contract against the other. Under all the authorities, therefore, the plaintiff had earned his compensation, and the only question that could remain was as to the time when it should be paid. We need not stop to consider the questions that would arise had

the proposed sale fallen through from some other cause than the act or default of the defendant, but even if the expression 'upon the consummation of said sale' was intended to fix a time before which payment to the plaintiff could not be legally demanded, when it further appears that such date would never arrive because of the inability of the defendant to perform his contract with his purchaser, we can see no way in which it can be convincingly argued that the plaintiff might not sue for and recover the compensation he had earned." See also *Tice v. Easterday*, 148 Pa. Superior Ct. 457, 25 A. 2d 754; and *Black Co. v. Baker*, 88 Pa. Superior Ct. 206.

In the present case the purchaser Nolan's dissatisfaction was genuine and not capricious. It was not prompted by caprice or bad faith. See *Burke v. Daughters of the Most Holy Redeemer, Inc.*, 344 Pa. 579, 581, 26 A. 2d 460; and *Smith v. Weaver*, 41 Pa. Superior Ct. 253, 255. If the seller had been able to perform the warranties which he made in his written agreement, he could have enforced performance of the contract by the purchaser. The plaintiff produced an enforceable contract and it was not consummated because of the defendant's failure. The plaintiff had done everything necessary to earn his commission and his right thereto should not be defeated because of the defendant's default.

The court below also entered judgment n.o.v. for the defendant because of "the broker's failure to disclose material facts bearing on the transaction." There is authority to support this general principle. See *Raisch v. Cook*, 306 Pa. 208, 159 A. 170. We have read the record carefully and are convinced that the seller knew all of the facts concerning the purchaser and was entirely satisfied therewith. The defendant, Mr. Spellman, in cross-examination admitted that he knew Mr. Nolan was just a strawman and had nothing to

do with the business. He testified in this connection as follows: "Q. You didn't care whose money you got? A. Absolutely not. Q. One man's money is as good as another's? A. Yes, sir." There is no evidence that the plaintiff exercised any bad faith in this transaction. The defendant-seller had many meetings with the parties in interest and their attorneys and at no time raised any objection to this phase of the matter.

It is our opinion that the court below should have entered judgment upon the verdict.

Judgment is reversed and the record is remanded to the court below for the entry of judgment in favor of the plaintiff in the amount of $2,364.00 with interest from March 11, 1960.