## Simon *v.* H. K. Porter Company, Appellant.

Argued January 5, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Francis E. Shields*, with him *Peter Hearn*, and *Pepper, Hamilton & Scheetz*, for appellant.

*Herman Moskowitz*, for appellee.

OPINION BY MR. JUSTICE COHEN, April 24, 1962:

Plaintiff-appellee, Simon, a real estate broker, brought suit in assumpsit, claiming a broker's commis-

sion by virtue of an oral agreement with appellant that he secure a purchaser for a certain property owned by appellant. At trial, the jury returned a verdict for appellee. Appellant, thereupon, filed motions for a judgment n.o.v. and for a new trial, both of which were denied by the court en banc, and judgment entered. Appellant appeals.

Viewing, as we must, the evidence and inferences in the light most favorable to the verdict winner in our consideration of the motion for judgment n.o.v., the record discloses the following facts:

Appellee was one of several brokers authorized by appellant to secure a purchaser for the particular tract in question, one of several parcels of excess property which appellant had put on the market. Nippes, a vice-president of appellant, had been made general manager in Philadelphia and put in charge of disposing of this real estate. In conjunction with the solicitation of bids, appellant advertised the tract in the Wall Street Journal in July, 1957, stating that "for full information" prospective purchasers were to contact their broker, appellant's agent in New York or Nippes in Philadelphia.

During the early part of 1957, appellee produced several prospects for Nippes, none of whom, however, concluded a deal for the purchase of the property. Appellee then introduced one Perelman who expressed interest in the tract. At a meeting with Perelman and appellee, Nippes agreed to a sale of the property, subject to his approval of Perelman's financial statement.

Perelman's financial statement was submitted by appellee to Nippes who accepted it as satisfactory. At a meeting between the two, Nippes told appellee to have an agreement of sale drawn up between appellant and Perelman, including therein certain reservations which were required by appellant. Appellee then retained an attorney to prepare an agreement of sale

which would embody the reservations and the various terms agreed upon by the parties. During the course of drawing the agreement, the attorney had phone conversations with both Nippes and with appellant's general counsel in Pittsburgh. As soon as he received the agreement from his attorney, appellee called Nippes and informed him he would like to come to Nippes' office with the agreement of sale signed by Perelman and Perelman's check for the down payment. Nippes told appellee not to bother since he had received a check from another party that morning and had sold the property to the other party. After appellee's subsequent efforts to get defendant to accept the agreement of sale and the check proved futile, he brought this action to recover his commission.

A broker earns his commission when he produces a purchaser who is ready, willing and able to contract at the price and terms fixed by the vendor-principal, notwithstanding the refusal of the principal to sign the agreement of sale, *Wilson v. Hays*, 283 Pa. 271, 129 Atl. 59 (1925), or without reference to the outcome of the sale, *Schamberg v. Kahn*, 279 Pa. 477, 124 Atl. 138 (1924). See also *Detchon v. McSorley*, 301 Pa. 493, 152 Atl. 689 (1930). *Perry v. Spellman*, 194 Pa. Superior Ct. 555, 168 A. 2d 615 (1961).

Appellant contends, however, that: (1) appellee did not perform in accordance with his obligation as agent under the agreement with appellant in that he failed to produce a buyer, ready and willing and able to purchase the real estate involved upon terms fixed by appellant, and (2) that Nippes was not authorized to accept a purchaser's offer or to establish the terms and conditions of the sale of real estate, but had authority only to solicit offers from prospective purchasers and to submit them for approval to appellant's president and/or board chairman.

In asserting both of these arguments, appellant is requesting us to upset the factual determination by the jury which was affirmed by a unanimous court en banc. It is a commonplace that the jury is the sole arbiter of disputed questions of fact. We will not upset the jury's determination absent a showing that it is capricious, against the weight of the evidence, and resulted in a miscarriage of justice. *Bohner v. Eastern Express, Inc.,* 405 Pa. 463, 175 A. 2d 864 (1961). Here the jury evaluated the evidence at hand and found that Nippes and Perelman had agreed orally to the major provisions relative to the sale of the property, and that Perelman had signed an agreement of sale containing *all* of the restrictions and reservations imposed by appellant through Nippes. Furthermore, all this occurred prior to the time that Nippes informed appellee that he had obtained another purchaser.

A purchaser of realty is to be considered "ready, willing and able to buy" so as to entitle a broker to a commission if the purchaser has agreed to purchase the property upon the terms specified by the seller and has sufficient funds on hand or is able to command the necessary funds with which to complete the purchase within the time allowed by the seller. *William C. Bender & Co. v. Tritz,* 338 Ill. App. 661, 88 N.E. 2d 519 (1949). Appellee had produced such a buyer and is entitled to his commission if nothing detracted from the efficacy of Nippes' acceptance of appellee's offer. This leads to the next issue raised by this appeal.

The jury was justified in finding, notwithstanding appellant's argument to the contrary, that Nippes was authorized to accept offers on behalf of appellant. The question of the scope of an agent's authority is peculiarly one for the jury. *Exner v. Gangewere,* 397 Pa. 58, 152 A. 2d 458 (1959). The record discloses that Nippes was appellant's only agent in Philadelphia concerned with selling real estate and had handled com-

pletely all the negotiations regarding the sale of the land involved here. Moreover, both prior and subsequent to the transaction in question, Nippes sold eight other parcels for appellant.

In the words of the court below: "It is well settled that the liability of a corporation on contracts entered into by its agents is not limited to such acts of its agents as are expressly authorized or necessarily implied. A corporation may also be bound on any contract negotiated by its agents while acting within the apparent scope of their authority [citing cases]. The apparent authority of an agent is clearly distinguishable from his express authority in that the former may cause the principal knowingly permits the agent to exercise the particular authority or holds him out as possessing it [citing cases]. And apparent authority may not have been actually granted. However, it exists be-exist even in the absence of express authority. [citing case]."

Moreover, it ill behooves appellant to challenge the determinations of both the jury and the court below and to assert the aforementioned arguments in light of a letter sent by appellant's general counsel to the attorney who drew up the intended agreement of sale. Therein it is stated: "However, it is quite apparent from the information available to us that Mr. Simon was not given an exclusive listing of the property, and that he did not produce *a buyer willing to meet terms acceptable to Mr. Nippes until after Mr. Nippes had accepted an offer from another purchaser."* (Emphasis supplied).

This letter is a clear admission that appellee did produce a buyer ready, willing and able to purchase on terms acceptable to appellant through Nippes (although appellant's liability for appellee's commission is denied on the ground that the buyer was produced after the acceptance of another purchaser), and that

Nippes had the authority to negotiate and conclude an agreement of sale for the property concerned. Appellant is bound by its admission.

Lastly, we reject the contention by appellant that the charge of the trial court was improper and prejudicial and that it is entitled to a new trial. Time and again we have stated that we will not reverse the lower court's refusal of a new trial unless there has been a clear abuse of discretion or an error of law. *Muroski v. Hnath,* 392 Pa. 233, 139 A. 2d 902 (1958), *Kuhns v. Brugger,* 390 Pa. 331, 135 A. 2d 395 (1957). Neither requisite is present here.

Judgment affirmed.

————

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

It is extremely doubtful whether the plaintiff proved that his alleged buyer, Perelman, who incidentally never testified in his behalf, agreed to or ever heard of some of the terms and conditions fixed by the seller. While plaintiff's evidence, taken at best for him, probably allows him to barely squeeze by an n.o.v., it is of such doubtful quality and so legally weak on several material and important legal points involved, that in the interests of justice I would grant a new trial.

In addition, I believe the charge of the Trial Judge was inadequate in that he submitted to the jury only one of defendant's contentions, i.e., the authority of its vice-president, and completely ignored its contention that the plaintiff was required to prove that the proposed purchaser was ready, willing and able to complete the purchase.